IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTINA BLANTON,

           Plaintiff,

        vs.                       Case No. 11-4138-JTM

MICHAEL J. ASTRUE, Commissioner of
Social Security,

           Defendant.

MEMORANDUM AND ORDER

Plaintiff Christina Blanton has applied for Social Security supplemental security income (SSI) benefits.  Her application was denied by the Administrative Law Judge (ALJ) on December 10, 2010, a decision affirmed by the Appeals Council on August 18, 2011. There are three allegations of error by Blanton. First, she contends that the ALJ failed to give proper weight to the medical opinions of Dr. Joseph Sankoorikal, Dr. Stanley Mintz, Arlene Long (ARNP), and the state agency physicians. Second, that the ALJ's findings are not supported by substantial evidence. And third, that the ALJ's findings as to her residual functional capacity (RFC) are not supported by substantial evidence.

Plaintiff-claimant Blanton was born on June 12, 1970. She has stated that she became disabled beginning January 1, 2009, due to mental illness, hepatitis C, deterioration in her back, arthritis, and a hump forming in her back. She has previously worked as a laundry worker, home health aide, stockman, and hospital cleaner.  The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 20-28), and the briefs of Blanton (Dkt. 12, at 2-19) and the Commissioner (Dkt. 15, at 3-16).

The ALJ concluded that Blanton suffered from the severe impairments of obesity, disorder of the back, hypertension, posttraumatic stress disorder, moderate dysthymia, and anxiety disorder. He determined that Blanton's prior history of Hepatitis C generated some headaches, but were not severe in nature. He found that none of her impairments, individually or in combination, met the listed impairments of 20 C.F.R. Part 404, Subpart P, Appx. 1, 20 C.F.R. § 416.920(d), 416. 925 and 416.926. (Tr. 22). He found that Blanton retained the RFC to

> lift 20lbs occasionally and l0 lbs frequently. She can walk and stand 6 out of 8 hours and is able to sit 6 out of 8 hours) except the claimant can only occasionally climb stairs, but can never climb ropes, scaffolds or ladders. She can occasionally crouch and crawl and can frequently balance, stoop and kneel. She is limited to occasional overhead reaching and handling and must avoid unprotected heights and hazardous moving machinery. She needs to avoid prolonged exposure to extreme cold temperatures. She is limited to jobs that consist of simple routine repetitive tasks and require only occasional cooperation and interaction with the general public. She can work in proximity to co-workers but is limited to jobs that do not require close cooperation and interaction with co-workers and allows relative isolation. She retains the ability to maintain attention and concentration for minimum 2-hour periods at a time, and is able to adapt to changes in the work place on a basic level. She is able to accept supervision on a basic level.

(Tr. 23-24).

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps:  she must show that she is engaged in substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act.  Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

3

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

Blanton argues that the ALJ erred in failing to give proper weight to certain medical source evidence, discounting the opinions of Dr. Sankoorikal, Dr. Mintz, Nurse Long, and state agency physicians. The court has reviewed the relevant medical evidence and finds no error on the part of the ALJ.

The ALJ explicitly gave the opinion of Dr. Sankoorikal, who saw Blanton only once, some weight. (Tr. 26). The ALJ accurately noted that Sankoorikal did no independent objective medical testing. In his summary opinion, Sankoorikal stated that Blanton could occasionally lift and carry twenty pounds, and frequently carry and lift ten. He stated she could stand and walk for three, and sit for four hours, out of eight-hour workday. During this time she would have to change positions at will. She could occasionally stoop and climb stairs, but should not twist, crouch, or climb ladders.

The claimant objects to the ALJ's assessment of Dr. Sankoorikal's opinion as essentially normal, citing findings of a "somewhat limited" range of lubrosacral motion, which he ascribed to pain and tenderness. (Tr. 436-37). However, this characterization is consistent with medical evidence showing that Sankoorikal prescribed only conservative treatment, including the use of a TENS unit. (*Id.*) Such conservative treatment may be properly taken as indicative of a nondisabling condition. *See Wall v. Astrue*, 561 F.3d 1048,

4

1068-69 (10th Cir. 2009) (credibility of claims of disabling conditions may be undermined by a history of conservative medical treatment). Sankoorikal's examination showed no muscle spasms and a normal range of motion in her neck, and straight leg raise tests were negative. These equivocal findings, coupled with the single visit to Sankoorikal, the absence of any objective medical testing, and the prescription of conservative treatment, justified the ALJ's decision to accord Dr. Sankoorikal's statement some weight.

Stanley Mintz (Ph.D.) made mental evaluations of the claimant on July 22, 2009 and March 1, 2010. Mintz concluded that Blanton exhibited no psychosis, delusions, or hallucinations, but did appear depressed and showed signs of posttraumatic stress disorder. Mintz concluded that Blanton had a global assessment of functioning (GAF) score of 50.

The ALJ concluded from this that Blanton would have moderate difficulty in social and occupational settings, has few friends and has conflicts with peers or co-workers. In her appeal, Blanton argues that the ALJ erred because moderate social and occupation difficulty correlates with a GAF score of 51 or higher, whereas Mintz assigned her a score of 50. *See* American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (Text Revision 4th ed. 2000) at 34.

GAF scores, however, are subjective in nature, *Chester v. Apfel*, No 98-7106, 1999 WL 360176, *3 n. 1 (10th Cir. June 4, 1999), serving primarily as a diagnostic tool for practitioners. They are not controlling for purposes of the Commissioner's assessment of disability claims, *see* 65 Fed.Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000), and will

not be considered determinative of the issue of disability. *See Heinritz v. Barnhart*, 191

F3d.Appx. 718, 722 (10th Cir. 2006). Mintz's GAF score should be viewed in conjunction

with other subjective assessments, including his finding that Blanton might have difficulty

with co-workers and supervisors, but could understand simple and intermediate

instructions. The ALJ's assessment of Blanton's mental condition reflects a considered

judgment based upon substantial evidence.

Further, the ALJ did not discount Mintz's conclusions (Tr. 10F, 24F), but explicitly

assigned them "significant weight," deeming them "consistent with the medical evidence

in file." (Tr. 26). He concluded based on that evidence that Blanton

> is independent in most of her activities of daily living, cares for her hygiene,
> cares for her pets, drives, goes out alone, shops, manages her finances,
> spends time with family and others, cooks, among others, all of which would
> support the aforementioned opinions. Further, supporting the opinions is
> fact that she appears to be responding to treatment.

(*Id.*)

The ALJ also did not err in giving the conclusions of Nurse Practitioner Long less

than controlling weight.  A nurse practitioner is not an acceptable medical source. See 20

C.F.R. § 416.913; SSR 06-3p. Here, the ALJ did not exclude Long's opinion, but explicitly

considered it before deciding that it should be accorded little weight. Specifically, the ALJ

noted that Long's opinion was not supported by meaningful treatment notes, and Long's

described level of functioning was not supported by objective evidence and indeed was

contradicted as to the severity of impairment by other medical sources. (Tr. 26).

Finally, the ALJ, who noted that the opinions of the state agency medical consultants were consistent with the medical evidence, did not err in this assessment. Blanton complains in her appeal that the ALJ should have pointed to the specific portions of the medical record as supporting the consultants' evaluations. While specific record citation is helpful, the failure to include such references are not reversible error where, as here, the ALJ explicitly notes that his conclusions are based on all of the evidence, and the consultants' opinions, do, in fact, support the ALJ's conclusions of moderate limitations.

Blanton's second claim of error is that the ALJ 's findings are generally unsupported by substantial evidence. She stresses portions of her own statements indicating a high degree of disability, and a statement made by her boyfriend, Robert Davis.

The court finds no error. While the ALJ should have explicitly addressed the statement of Blanton's boyfriend, the statement itself is essentially consistent with Blanton's own. *See Davis v. Astrue*, 237 Fed.Appx. 339, 342 (10th Cir. 2007) (finding no need for remand for separate consideration of a third party statement "largely cumulative of her husband's testimony [given that] the ALJ's decision states and demonstrates that he considered all of the evidence").

As to Blanton's own statements, the ALJ properly found that Blanton was "not entirely credible." (Tr. 25). He reached this conclusion based on the evidence as a whole, including the fact that

> The claimant has been noncompliant with treatment and has done very little to improve her health situation. She alleges that she has had no treatment other than pain medication however, records in file show that she failed to

follow through with physical therapy. (Exhibit 18F) The claimant alleged severe arthritis in her hip, but x-rays are negative. She also indicated that her right knee was totally shattered however the x-ray shows a normal knee. (Exhibits 18F and 28F) The claimant overdoses on some of her medication but fails to take her hypertension medication. (Exhibit 28F) She testified that she is not getting mental health treatment because she is unable to afford the $6.00 handicap but yet she continues to smoke, which represents funds that could be used for some minimal transportation or medical treatment.

(Tr. 25-26).

The ALJ's credibility assessment is consistent with the factors set forth in *Teter v. Heckler*, 775 F.2d 1104 (10th Cir. 1985). The failure to comply with prescribed medical treatment may be properly taken as suggestive of a lack of credibility. *See Fowler v. Astrue*, No. 07-1270-JTM, 2009 WL 722019, *3 (D. Kan. 2009).

Finally, Blanton argues that the RFC adopted by the ALJ is not supported by substantial evidence.  Blanton argues that, "[i]n this case, the ALJ's RFC is faulty because the ALJ erred in weighing the medical opinions of record, failed to consider important substantial evidence, committed several errors in assessing the facts that he used to support his findings and failed to apply the correct legal standards." (Dkt. 12, at 30-31). The claimant then concludes her brief, making her argument of RFC error apparently contingent upon her prior claims of error. As the court has found that those claims of error should be denied, it accordingly finds no basis for finding error in the ALJ's assessment of Blanton's RFC.

The court has noted the ALJ's findings with respect to Blanton's ability to perform light work. Based upon the limitations supported by substantial evidence, and with

8

support of the vocational expert's testimony, the ALJ determined that Blanton could perform jobs such as poly packer and heat sealer, plastic hospital products assembler, or small parts production assembler. The court finds substantial evidence supported the ALJ's decision, and denies the claim of error.

IT IS ACCORDINGLY ORDERED this 3rd day of January, 2013, that the present appeal is hereby denied.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE